**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Lynne Vasquez,<br><br>Plaintiff,<br><br>v.<br><br>Michael Astrue, Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-11-2406-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Deborah Vasquez, which challenges the Social Security Administration's ("SSA") decision to deny benefits. (Doc. 1.) For the reasons set forth below, the Court vacates that decision and remands for an award of benefits.

## BACKGROUND

**I.   PROCEDURAL HISTORY**

On February 4, 2009, Vasquez filed for disability insurance benefits and supplemental security income. (R. at 110-21.) Vasquez alleged disability due to chronic obstructive pulmonary disease, degenerative disc disease, arthritis, depression, anxiety, and post-traumatic stress disorder, with a disability onset date of March 15, 2008. (*Id.* at 110-11, 124.) Vasquez's claim was denied both initially, (*id.* at 46-49, 502,) and upon reconsideration (*id.* at 498, 41-43.) Vasquez then appealed to an Administrative Law Judge ("ALJ"). (*Id.* at 27-33.) The ALJ conducted a hearing on the matter on July 23, 2010. (*Id.* at 511.)

In evaluating whether Vasquez was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (*Id.* at 11-26.) The ALJ determined at step one that Vasquez had not engaged in substantial gainful activity since the alleged onset date. At step two, he concluded that Vasquez suffered from the following severe impairments: degenerative disc disease, trigger finger contraction, major depression, anxiety disorder, and alcohol abuse in sustained remission. At step three, the ALJ determined that none of these impairments met or equaled any of the SSA's listed impairments. (*Id.* at 16, 19.)

The ALJ then evaluated Vasquez's residual functional capacity ("RFC"),[2] concluding that Vasquez could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except that the claimant is limited to simple, routine, tasks, [sic] with few workplace changes." (R. at 21.) Based on this RFC, the ALJ determined at step four that Vasquez's RFC left her "unable to perform any past relevant work." (*Id.* at 24.) The ALJ therefore reached step five, concluding that Vasquez could perform a

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if he proves: (1) that he is not presently engaged in a substantial gainful activity[,] (2) that his disability is severe, and (3) that his impairment meets or equals one of the specific impairments described in the regulations.  If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, he is not able to perform any work that he has done in the past.  Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy.  This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments.  *See* SSR 96-8p (July 2, 1996).

- 2 -

significant number of other jobs in the national economy that met her RFC limitations. (*Id.* at 25.) The ALJ employed the medical-vocational guidelines ("the grids") to make this determination. (*Id.*) As a result, the ALJ concluded Vasquez was not disabled. (*Id.* at 26.)

On October 14, 2011, the Appeals Council declined to review the ALJ's decision. (*Id.* at 4-7). Vasquez had supplemented the record with additional evidence regarding her mental treatment following the ALJ's review. (*Id.* at 7, 511-604.) The Appeals Council's ruling made the ALJ's decision the Commissioner's final decision. On December 6, 2011, Vasquez filed suit in this Court.[3] (Doc. 1.) The matter became fully briefed on June 12, 2012. (Docs. 13, 14, 20.)

## II.   FACTUAL BACKGROUND

Vasquez, born in January of 1959, alleges that she has been disabled since March 15, 2008. (R. at 118.) Prior to the alleged onset of her disability, Vasquez had work experience as a convenience store clerk and as an insurance broker. (*Id.* at 24.)

In March 2008, Vasquez stopped work as a convenience clerk. (*Id.* at 111-12.) Vasquez reports that she was terminated from this position because of "leaning on the counter due to my back problems." (*Id.*) Shortly after being terminated, Vasquez was admitted to Maricopa Medical Center for "secondary alcohol withdrawal, pneumonia, . . . and depression." (*Id.* at 64, 323.) The record establishes a lengthy history of mental health issues, joint and back pain, and breathing problems. At her hearing, Vasquez testified that her primary complaint related to her mental health issues. This is the principal relevant issue in her appeal.

Vasquez's complaints of mental health issues have been observed by both treating and examining medical providers. In October 2008, Vasquez's primary physician, Douglas Ray, M.D., noted that in addition to her "diffuse joint pain," Vasquez has "a

---

[3] Vasquez was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

history of chronic depression with anxiety." (*Id.* at 199.) Dr. Ray also diagnosed Vasquez with depression and associated anxiety. (*Id.*) Treating physicians noted her "altered mental status" in November 2008 and "persistent depression" in February 2009. (*Id.* at 263, 185.)

In April 2009, a state examiner, Dr. Brent B. Geary, performed a consultative psychological assessment of Vasquez. Vasquez was diagnosed with "major depressive disorder, recurrent, presently moderate, panic disorder without agoraphobia, mild to moderate, alcohol abuse, active." (*Id.* at 241.) Further, Dr. Geary noted that Vasquez has conditions which "will impose . . . limitation[s] for 12 months" and has "moderate limitation" on adaptation, including "reduced ability to handle stress and pressure, would likely miss more work than allowable, emotionally unstable with propensity for [c]rying." (*Id.* at 243.)

Although he provided a narrative report, Dr. Geary also filled out a Psychological/Psychiatric Medical Source Statement form provided by the Arizona Department of Economic Security Disability Determination Service. The form gives the doctor's summary assessment of Vasquez's performance in four categories: (1) Understanding and Memory, (2) Sustained Concentration and Persistence, (3) Social Interaction, and (4) Adaptation. These assessments were apparently designed to reveal what Dr. Geary "in his best judgment feel[s] the [Vasquez] can do." (*Id.*)

Under the adaptation category, Dr. Geary indicated the Vasquez suffered from only "moderate limitations". Nevertheless in his note under that category as well as in his narrative report, Dr. Geary stated that the Vasquez 'would likely miss work more than allowable."

A month later, Dr. Mark Stevenson reviewed Vasquez's mental health records, including Dr. Geary's report, (*id.* at 220-37,) to make the initial determination regarding mental impairment. There is no evidence in the record that Dr. Stevenson is other than a non-examining source. He filled out the SSA forms that include the rating of functional limitations as is required by 20 C.F.R. § 404.520a(c). Dr. Stevenson scored Vasquez in

each of the four categories set forth for determining functional limitation. He found a mild degree of limitation in her activities of daily living and a moderate degree of limitation in maintaining both social functioning and concentration, persistence, and pace. (R. at 230.) He also notes that Vasquez has had no episodes of decompensation. (*Id.*) That assessment meant Vasquez's psychological or psychiatric condition did not meet or equal the medical impairment set forth in the regulations. (*Id.* at 231.) Noting Dr. Geary's diagnoses and limitations, Dr. Stevenson nevertheless observed that Vasquez "is independent in her ADLs [Activities of Daily Living]" and that her symptoms "do[] not suggest a level of functional limitation that would preclude [her] from all work-related activities." (*Id.* at 232.)

Dr. Stevenson also filled out the SSA's Mental Residual Functional Capacity Assessment form. In that form the doctor rated Vasquez in twenty work-related mental activities "within the context of the individual's capacity to sustain that activity over a normal workday and workweek on an ongoing basis." (*Id.* at 234.) Dr. Stevenson found Vasquez "moderately limited" in six of twenty work-related mental activities. (*Id.* at 234-35). Specifically, Dr. Stevenson found that Vasquez was "moderately limited" in her ability to:

(1) understand and remember detailed instructions;

(2) carry out detailed instructions;

(3) maintain attention and concentration for extended periods;

(4) complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

(5) . . . interact appropriately with the general public; and,

(6) . . . respond appropriately to changes in the work setting.

(*Id.* at 234-35). Despite these limitations, Dr. Stevenson concluded that "[o]verall, . . . [Vasquez] is seen as capable of meeting the basic cognitive/emotional demands of

simple/unskilled work on a competitive, sustained basis." (*Id.* at 236.)

On Vasquez's request for reconsideration, Dr. Mary Downs reviewed Vasquez's mental health in August 2009. (*Id.* at 125.) Affirming Dr. Stevenson's determination, Dr. Downs opined that Vasquez's depression was not a "significant enough impairment to preclude employment. Additional MER [Medical Evidence of Record] does not support a worsening of [her] mental condition or suggest significant functional limitations that would preclude participation in competitive SGA." (*Id.*)

In October 2009, Vasquez was admitted to Urgent Psychiatric Care for suicidal ideation and auditory hallucinations. (*Id.* at 416, 418.) At the time, Vasquez was assigned a Global Assessment of Functioning ("GAF") score of 35, which represents severe symptoms; following treatment with psychotropic drugs she was assessed a GAF score of 60, representing moderate symptoms, but she still complained of auditory hallucinations.[4] (*Id.*)

In April 2010, Dr. Ray stated that Vasquez "continues to be homeless and is currently still sleeping on the ground in a tent. . . . She continues to have significant anxiety, . . . states her depression is stable on sertraline . . . and denies any increased feelings of depression or any suicidal thoughts." (*Id.* at 445.) Following her ALJ hearing, Vasquez submitted additional medical records from Valle Del Sol, where she had been receiving counseling. Records from Valle Del Sol note "both A/V [audio-visual] hallucinations," "Post Traumatic Stress Disorder," and other issues with depression, anxiety, and sleep and appetite problems. (*Id.* at 544-49, 521.)

---

[4] Rated on a scale from zero to 100, the GAF is "used to rate social, occupational and psychological functioning on a hypothetical continuum of mental health." Social Security Disability Law & Procedure in Federal Court § 5:30. "A GAF of 35 is strong evidence of an inability to work." *Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1214 (N.D. Ala. 2004). "A GAF score between 51 and 60 indicates moderate symptoms, such as occasional panic attacks, while a score from 71 to 80 indicates transient reactions to normal stress, with only a slight impairment of functioning." *Gravatt v. Paul Revere Life Ins. Co.*, CV982166PHXROSOMP, 2005 WL 2789315, at *4 (D. Ariz. Oct. 25, 2005).

**DISCUSSION**

**I.    LEGAL STANDARD**

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Subject to the Ninth Circuit's standards in particular cases, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). However, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989)). Nor may the Court "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003).

**II.   ANALYSIS**

Vasquez argues that the ALJ erred by: (A) making findings contrary to those of state consultative examining physician, Dr. Geary; (B) rejecting Vasquez's subjective complaint testimony without articulating clear and convincing reasons for doing so; and (C) relying on the medical-vocational guidelines ("the grids") for assessing Vasquez

within nonexertional limitations. For the reasons below, the Court finds that the ALJ dealt improperly with Dr. Geary's testimony and improperly discounted Vasquez's testimony. Applying the credit as true rule, the third argument is moot and remand for calculation of benefits is in order.

### A. Dr. Geary's Assessment

Vasquez contends that the ALJ failed to properly account for the opinion of the state consultative examining physician, Dr. Geary, when formulating Vasquez's RFC.[5] State physicians like Dr. Geary are considered experts. *See* SSR 96-6p (July 2, 1996).[6] Their opinions and conclusions should be accorded greater weight than non-examining physicians. *See Edlund v. Masssanari*, 253 F.3d 1152, 1158-59 (9th Cir. 2001). When an examining physician is contradicted by another physician, the ALJ must still give specific and legitimate reasons founded on substantial evidence in the record for rejecting the opinions of an examining physician. Here, the ALJ purportedly gave "great weight" to Dr. Geary's "comprehensive and consistent" "evaluation[ ] of the claimant's mental and physical impairments." (R. at 24.) Vasquez, however, contends that the ALJ's RFC conclusion runs contrary to the limitations described by Dr. Geary in his report.

Dr. Geary made the following diagnoses: major depressive disorder, panic disorder without agoraphobia, alcohol abuse, and depressive personality features. (*Id.* at

---

[5] In greater detail, a residual functional capacity ("RFC") is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96–8p. In particular, the RFC assessment must describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* The RFC determination may be based on a wide variety of evidence in the record–the claimant's medical history, laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributable to a medically determinable impairment, evidence from attempts to work, the need for a structured living environment, and work evaluations. *Id.*

[6] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009). They "'reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" *Id.* (alteration in original) (quoting *Avenetti v. Barnhart,* 456 F.3d 1122, 1124 (9th Cir. 2006)).

241.) These diagnoses mirror those impairments the ALJ found to be severe (major depression, anxiety disorder, alcohol abuse in sustained remission). (*Id.* at 16.) With regard to the severity and impact of Vasquez's symptoms, Dr. Geary noted that Vasquez had "moderate limitations" and that she had "reduced ability to handle stress . . . [and] would likely miss more work than allowable." (*Id.* at 243.) He further opined that Vasquez's tendency to have panic attacks would "disrupt her attention and task orientation." (*Id.* at 242.) He also noted that Vasquez's "pace is considerably slowed." (*Id.*) Although the ALJ gave this opinion "great weight" and specifically mentioned Dr. Geary's doubts about Vasquez's ability to sustain regular work, (*id.* at 18,) the ALJ nevertheless declared Vasquez capable of performing modified light work (*id.* at 24.) Vasquez asserts that the ALJ cannot give "great weight" to Dr. Geary on one hand, and then ignore the significant limitations he found with the other.

SSR 96-8p details the metric intended for capture in the RFC: "Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." (emphases in original). The question becomes whether Dr. Geary's opinion amounts to a finding that Vasquez is unable to sustain full-time work.

Two non-examining physicians did not think so. Dr. Stevenson, who performed his review of Vasquez's medical records a month after Dr. Geary, appears to have based his conclusions on Dr. Geary's report. Dr. Stevenson determined that Vasquez's symptoms "do[] not suggest a level of functional limitation that would preclude [claimant] from all work-related activities." (*Id.* at 232.) After the SSA's original denial of benefits, and on the motion for reconsideration, Dr. Downs produced a one page case analysis in which she observed that "[w]hile MER indicates [claimant] drinking substantial amounts of alcohol . . . it does not seem to be cause significant enough impairment to preclude employment. Additional MER does not support a worsening of

[claimant's] mental condition or suggest significant functional limitations that would preclude participation in competitive SGA." (*Id.* at 125.)

The ALJ improperly addressed Dr. Geary's findings. The limitations Dr. Geary ascribed to Vasquez are inconsistent with an RFC of modified light work. That RFC meant Vasquez would be able "to do sustained work activities in an ordinary work setting on a regular and continuing basis, . . . 8 hours a day, for 5 days a week." SSR 96-8p (emphases omitted). Contrast that with Dr. Geary's opinion that Vasquez had "reduced ability to handle stress . . . [,] would likely miss more work than allowable", a tendency to have panic attacks that would "disrupt her attention and task orientation", and a "considerably slowed" pace. (*Id.* at 242-43.) There is a clear asymmetry between those two findings. That is troubling in light of the ALJ's claimed reliance on Dr. Greary's opinion. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (finding error where "the primary piece of evidence that [the ALJ] relied on does not support the propositions for which it is cited" and concluding "that the ALJ failed to build the requisite 'logical bridge' between the evidence and her conclusion").

The Commissioner's attempt to suggest that Dr. Geary's statement that claimant "would likely miss more work than allowable" can be disregarded because he did not say that she "would for certain miss more work than allowable" is unavailing. Opinions by their nature are not sureties. As discussed above, the regulations governing the program provide that "[w]hen we assess your mental abilities we . . . determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c). To the extent the Commissioner argues, pursuant to *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1173 (9th Cir. 2008), that the ALJ "reasonably translated" Dr. Geary's opinion that Vasquez "would likely miss work more than allowable" into his determination that Vasquez had a residual functional capacity for light work, that argument is untenable. One cannot have a residual functional capacity to perform any work as it is defined by the regulations when one would "miss work more than allowable." There was a higher degree of congruity between the examining physician,

non-examining physician, and the ALJ's RFC in *Stubbs-Danielson. See Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed. App'x 211 (9th Cir. 2009).

It is possible, as the Commissioner speculates in his brief, that Dr. Geary's opinion could be reconciled with the ALJ's RFC if the right testimony were in the record, together with corresponding analysis. For example, Dr. Geary might have been questioned on follow-up whether Vasquez would miss work more than was allowable if Vasquez were given a light or sedentary job. Yet there is no such evidence in the record, and the ALJ never addressed the inconsistency. As it stands, the opinions are in opposition. And the ALJ must give the opinions of a psychologist who actually examined the claimant more deference than the opinions of a psychologist who did not. *Edlund*, 253 F.3d at 1159; *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995); 20 CFR § 404.1527(c) ("Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *see also Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007) ("Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.") The ALJ cannot cover the inconsistency between its RFC and Dr. Geary's conclusions by pointing to the conclusions of two non-examining physicians. No matter how finely the Court parses the separate conclusions of Dr. Geary on the one hand and Dr. Stevenson and Dr. Downs on the other, they are in opposition.

This is not to say that the ALJ was bound by the opinion of Dr. Geary, Dr. Stevenson, or Dr. Downs when he made his RFC determination. *See* 20 CFR § 404.1527(e)(2)(i). But when Dr. Geary's opinion contradicted the opinions of both Drs. Stevenson and Downs, the ALJ had to present specific and legitimate reasons for rejecting the opinion of Dr. Geary that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. However, because neither Dr. Stevenson nor Dr. Downs examined the claimant, their assessments, either separately or in concert, cannot by themselves constitute substantial evidence sufficient to justify the rejection of Dr.

Geary's opinion by the ALJ. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Id.* at 831.

The ALJ states that he gave great weight to the opinions of Dr. Geary. It is conceivable that the ALJ had other reasons for determining that Dr. Geary's opinion was incorrect, or, somehow not inconsistent with the finding of some RFC in the claimant here. Nevertheless, they are not in the record. An ALJ must *resolve* conflicts in the evidence. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). This Court is required to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking. *Bray v. Comm'r of the Soc. Sec. Admin.,* 554 F.3d 1219, 1225-26 ((9th Cir. 2009) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943)). Because Dr. Geary actually examined Vasquez, the ALJ was required to be more clear in his analysis before rejecting his opinion—implicitly or explicitly. The ALJ was not. Accordingly, it was error for the ALJ to ignore parts of Dr. Geary's opinion. Given that Dr. Geary's opinion cuts straight to the heart of the disability inquiry, the error was not harmless.

### B. Vasquez's Statements

Vasquez testified at the SSA hearing on the degree of her mental and physical impairments. She described manic depression, an inability to be around a lot of people, severe anxiety, extreme pain in her lower back, and a need to lie down most of the day, but reported that her hands were much better after surgery. (R. at 611-19.) The ALJ articulated four reasons for finding much of her testimony incredible: (1) Vasquez's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment"; (2) her claims of extreme lower back pain, a need to lie down for almost the whole day, and COPD symptoms were inconsistent with her medical records and statements to physicians; (3) there was never an objective diagnosis of manic

depression; and (4) her account of her symptoms and their severity often changed from visit to visit. (*Id.* at 23.) The ALJ did not find any evidence of malingering on the part of Vasquez. None of the reasons he articulated supplies a proper basis for finding that Vasquez lacked credibility in her statements concerning the intensity of her impairments.

The legal standard governing claimant credibility is a matter of dispute between the parties. The Commissioner relies on *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc), where the Ninth Circuit set out to "determine the appropriate standard for evaluating subjective complaints of pain in Social Security disability cases." *Id.* at 342. The *Bunnell* Court opined that once there has been objective medical evidence of an underlying impairment, the ALJ must make specific findings, supported by the record, for why he rejected the claimant's testimony on the severity of the pain. *Id.* at 345-46. This is to ensure that the ALJ "did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* (quoting *Elam v. R.R. Retirement Bd.*, 921 F.2d 1210, 1215 (9th Cir. 1991)). Thus the Commissioner asserts that the standard governing claimant credibility is a specific finding standard, which it claims is more in line with the overall "substantial evidence" standard that governs these cases.

Many panels of the Ninth Circuit have subsequently held, however, that if there is objective medical evidence of an underlying impairment, "and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also, e.g.*, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The Commissioner claims that these cases, along with the several others reference in Vasquez's briefs, have overruled the standard articulated in *Bunnell* in violation of the Ninth Circuit rule that only en banc panels can overrule existing precedent. *See United States v. Camper*, 66 F.3d 229, 232 (9th Cir. 1995). That is not the case. *Bunnell* articulated a general standard for dealing with claimant testimony. The many subsequent cases have addressed a subset of cases where there is also no evidence of claimant malingering. They have articulated a

"clear and convincing" standard for those situations. While the Commissioner is undoubtedly unhappy with that approach, this Court cannot sit in judgment of the application of that standard, which is clearly the standard that governs claimant credibility in this circuit. Accordingly, the ALJ's reasons for finding Vasquez's testimony incredible must be "clear and convincing."

The first reason—that Vasquez's statements "are not credible to the extent they are inconsistent with the above residual functional capacity assessment"—is circular. The ALJ cannot determine the RFC and then look at Vasquez's statements; the RFC is supposed to incorporate those statements. *See Leitheiser v. Astrue*, No. CV 10-6243-SI 2012 WL 967647 at \*9 (D. Or. March 16, 2012) ("Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is circular reasoning and is not sustained by this court."); *Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1167 (D. Or. 2010) (same). It was improper to reject Vasquez's testimony on that basis.

The second reason is an inconsistency between Vasquez's testimony as to the severity of her physical impairments and her previous statements to physicians. Vasquez testified to "extreme" back pain and a need to lie down for six to eight hours in an eight hour day. (R. at 614-15.) The ALJ noted, however, that Vasquez had made several statements to physicians that were inconsistent with extreme back pain that requires one to lie down for the vast majority of the day. (*Id.* at 23.) The physicians who reviewed her records likewise found that she still retained a normal range of motion and the physical capacity to lift, stand, crouch, squat, bend, and so forth. (*Id.*) Vasquez does not appear to challenge the ALJ's finding of inconsistencies between her testimony on the severity of her physical symptoms and the other medical evidence. That is a clear and convincing basis for rejecting claimant testimony on symptom severity. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

The remaining reasons pertain to Vasquez's testimony regarding her mental impairments. At her hearing, Vasquez stated that the biggest problem that keeps her from being able to hold down a steady job is her "mental situation." (*Id.* at 611-12.) The ALJ noted that Vasquez's statement in her hearing that she was experiencing "manic depression" was not supported in the record because there was never any diagnosis of manic depression. (*Id.* at 23.) The ALJ also observed that "claimant's primary care physician has prescribed psychotropic medications, which the claimant recently reported were helping manage her depression symptoms." (*Id.*) Finally, the ALJ noted "claimant's account of her hallucinatory symptoms changed between her evaluation in the morning and her reevaluation in the afternoon" of her admission for suicidal ideation. (*Id.*).

First, while Vasquez may have misstated or been confused as to her diagnosis, the record is clear that she suffered from multiple mental health issues, including major depressive disorder. (*Id.* at 527, 547, 553, 596.) That a person suffering from a mental disorder may have misstated her diagnosis is not a clear and convincing reason for rejecting her testimony as to the subjective limitations she experiences as a result of those mental health issues. There is no evidence that Vasquez was using the purported diagnosis of manic depression to enhance her other symptoms. The symptoms she described were symptoms attributable to the impairments that the ALJ already recognized were severe. The difference between "manic" depression and depression is too minute to be a clear and convincing reason to reject Vasquez's testimony.

Similarly, fluctuations in the symptoms a claimant experiences, particularly in the course of a single day, is not atypical of severe mental illness. *See Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2011) (noting that "[g]iven the unpredictable course of mental illness, symptom-free intervals and brief remission are generally of uncertain duration and marked by the impending possibility of relapse"). Although Vasquez's symptoms fluctuated, the time frame the ALJ highlighted was a fifteen hour period while Vasquez was undergoing a battery of psychotropic treatment at an urgent care facility to which she was admitted for suicidal ideation. (*Compare* R. at 418 (treatment notes at 1

A.M. on October 12, 2009, noting battery of psychotropic drugs prescribed) *with* (*id.* at 416) (treatment notes at 4 P.M. on same day, noting general improvement but new hallucinatory symptoms).) Such fluctuation in the symptoms a claimant experiences or describes to her treating physicians is not inconsistent with the symptoms of a mentally ill person; nor is it a clear and convincing reason to reject Vasquez's testimony. *Orn*, 495 F.3d at 634 ("[c]onsistency does not require similarity in findings over time despite a claimant's evolving medical status"; instead, the opinions should be consistent "with the record as a whole").

Neither is the fact that Vasquez's primary care physician noted, at one time, that Vasquez's depression was "stable" a reason to reject Vasquez's testimony. First, the Commissioner presents this argument in his brief, but it does not appear in the ALJ's decision. Second, even if it did, it would be unavailing. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The medical evidence must therefore show not only that Vasquez was *on* medication, but that Vasquez maintained "effective control" over her symptoms with the aid of those medications. *Id.* The full text of the note from Dr. Ray is that Vasquez "continues to have significant anxiety, is taking Vistaril . . . for her anxiety, states her depression is stable on sertraline . . . and denies any *increased* feelings of depression or any suicidal thoughts." (*Id.* at 445 (emphasis added).) It appears clear that "stable" in this context does not mean "improved" or "controlled", but rather "has not worsened," or "has not increased." Therefore, this is also not a clear and convincing reason to reject Vasquez's testimony.

The ALJ also noted that despite Vasquez's testimony "that she went to group sessions twice per week and met with her therapist bi-weekly . . . . no updated mental health treatment records were ever received." (*Id.* at 23.) Vasquez subsequently did submit those records, and they were made part of the record by the Appeals Council. (*Id.* at 7.) However, the Appeals Council found "that this information does not provide a basis

for changing the Administrative Law Judge's decision." (*Id.* at 5.) The Court disagrees. Although lack of medical evidence cannot form the sole basis for discounting a claimant's testimony, it is a factor the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, however, Vasquez has provided additional records which objectively document her on-going treatment for depression, treatment for hallucinations, and a diagnosis, *inter alia* of "post-traumatic stress disorder," all consistent with Vasquez's testimony. (*Id.* at 520-604.)

The Commissioner argues that the Court should not consider this evidence in its determination of whether the ALJ's decision is supported by substantial evidence. However, two days after this case was fully briefed, the Ninth Circuit decided *Brewes v. Comm'r of Soc. Sec. Admin.*, which held that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." 682 F.3d 1157, 1163 (9th Cir. 2012). This ruling has effectively decided the issue, and the Court finds that the evidence submitted after the hearing corroborates Vasquez's testimony. The ALJ's reasons for discounting her testimony regarding her mental impairments are not, therefore, clear and convincing. That error was not harmless because a claimant's attestation of the severity of her mental impairment has significant bearing on the disability determination. The ALJ, however, did properly discount Vasquez's testimony as to the severity of her physical symptoms.

Having reached this conclusion, the question of whether the ALJ erred in relying on "the grids" rather than on a vocational expert is moot.

### III. REMEDY

The following determinations of ALJ were in error: arriving at an RFC that is inconsistent with the examining physician's diagnosis without proper explanation and discrediting Vasquez's testimony regarding the severity of her symptoms. All of these errors prejudiced Vasquez's case. The Court must therefore vacate the ALJ's conclusions

at steps four and five.

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

Here, all three elements are present. The ALJ has not produced substantial evidence showing that Vasquez is not disabled within the meaning of the Social Security Act. The main contrary evidence is found in the opinions of Drs. Stevenson and Downs, but those opinions, absent sufficient supporting evidence in the record, cannot serve as the required "substantial evidence." Moreover, the evidence is that Vasquez's mental impairments are the primary driver of her symptoms and are sufficient to make her disabled. Therefore, the purported inconsistencies in Vasquez's testimony regarding those physical impairments do not create an "outstanding issue[ ] that must be resolved before a determination of disability can be made." *Id.* The Court must therefore credit Dr. Geary's opinion and Vasquez's own testimony regarding the severity of Vasquez's mental impairments.[7]

## CONCLUSION

The ALJ made several errors of law that require vacating his decision. Because the

---

[7] The Court is aware of the Commissioner's position regarding the credit-as-true rule, but notes that even a Ninth Circuit judge who shares some skepticism of the rule's validity has noted that "because the crediting-as-true rule is part of our circuit's law, only an en banc court can change it." *Vasquez,* 572 F.3d at 602 (O'Scannlain, J. dissenting). A district court is not at liberty to ignore the rule based upon Defendant's claims that it conflicts with the Social Security Act and improperly usurps the ALJ's role as finder of fact. (Doc. 14 at 23).

- 18 -

record makes clear that Vasquez is disabled under the guidelines promulgated by the SSA, the Court reverses and remands for an award of benefits.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED IN PART AND VACATED IN PART**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for an award of benefits.

Dated this 7th day of February, 2013.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge